## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

THOMAS STEVEN FLAHERTY
ADC #115819                                                                                    PLAINTIFF

V.                                    2:12CV00103 BSM/JTR

AVERY G. COX, Corporal,
East Arkansas Regional Unit, ADC                                          DEFENDANT

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

## <u>INSTRUCTIONS</u>

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.    An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## I. Introduction

On June 4, 2012, Plaintiff, Thomas Flaherty, filed a *pro se* § 1983 Complaint (docket entry #2) initiating this action.[1] Subsequently, the Court entered

---

[1] At the time he filed this action, Plaintiff was incarcerated in the Tucker Maximum Security Unit.

Orders dismissing all of Plaintiff's claims except an excessive force claim asserted against Defendant Avery Cox, which arose from an incident that took place inside Plaintiff's cell in Isolation 3 of the East Arkansas Regional Unit ("EARU") on February 21, 2012.[2]

On August 20, 2013, the Court conducted an Evidentiary Hearing on Plaintiff's excessive force claim. Witnesses testifying on the merits of Plaintiff's excessive force claim were: Plaintiff; Defendant Cox; Corporal Arthor Witherspoon (the only other eyewitnesses to the incident); and Lieutenant Tyrone Washington, who took photographs of Plaintiff's injuries shortly after the incident.[3]

After hearing all of the evidence, the Court ruled from the bench and recommended granting Defendant Cox's Motion for Judgment as Matter of Law on Plaintiff's excessive force claim. In doing so, the Court *accepted as true* all of Plaintiff's testimony about the amount of force employed by Defendant Cox during the incident, but concluded that the described force used by Defendant Cox was neither unnecessary nor "maliciously and sadistically [employed] to cause harm." The Court went on to find that Plaintiff's self-described aggressive and belligerent conduct created a dangerous and rapidly escalating situation in which Defendant

---

[2] During § 1915A screening, the Court dismissed Plaintiff's claims that former Defendant Tyrone Washington: (1) subjected him to inhumane conditions of confinement while he was on behavior control status; and (2) failed to properly investigate Defendant Cox's use of force.  (Docket entries #9 and #13).

[3] Plaintiff also called as witnesses Jacqueline Carswell, a nurse at the Tucker Maximum Security Unit and Richard Ball, who was the Deputy Warden over general population at the EARU. Neither of those witnesses provided any testimony that was relevant to the merits of Plaintiff's excessive force claim against Defendant Cox.

Cox was justified in using the level of force described by Plaintiff and that Defendant Cox used that force in "a good faith effort to maintain and restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013).

After carefully weighing Plaintiff's testimony that, after the incident was over, Defendant Cox spit on him several times, and the countervailing testimony of Defendant Cox and Corporal Witherspoon, both of whom adamantly denied that Defendant Cox ever spit on or at Plaintiff, the Court found that Plaintiff had failed to maintain his burden of proving by a preponderance of the evidence that Defendant Cox spit on or at him.

The Findings of Fact and Conclusions of Law contained in this Recommended Disposition supplement and support the Court's recommendation, made on the record at the conclusion of the Evidentiary Hearing, that Judgment should be entered in favor of Defendant Cox on all aspects of Plaintiff's excessive force claim.

## II. Findings of Fact

1.      Plaintiff began his incarceration in the EARU in August of 2011. *See* DX#12 at p.13. During the time Plaintiff was incarcerated in the EARU, he received numerous disciplinaries for attacking other prisoners and guards. *See*

DX#12 at pp.11-12. As a result, Plaintiff spent most of his time incarcerated in isolation units in the maximum security area of the EARU.

2.     On February 21, 2012, Plaintiff was incarcerated in Isolation 3 of the EARU. He was serving a thirty-day sentence on a major disciplinary conviction for assaulting and threatening two guards. *See* DX#12 at p.11. During the Evidentiary Hearing, Lieutenant Washington testified that, in February of 2012, he considered Plaintiff to be one of the five most violent prisoners in the EARU.

3.     Because of Plaintiff's history of violence, a "Staff Alert" was posted on the outer door of his cell in Isolation 3. It stated that Plaintiff was only to be removed from his cell by officers holding the rank of Sergeant or higher. In his testimony, Lieutenant Washington explained that only officers with the rank of Sergeant or higher are authorized to carry mace and they receive special training that better equips them to move and handle violent prisoners like Plaintiff.

4.     In February of 2012, Defendant Cox held the rank of Corporal. He and Lieutenant Washington both testified that, during the evening shift on February 21, Isolation 3 was short on staff and a Sergeant was *not* available to escort Plaintiff from his cell to shower call. Defendant Cox testified that he knew, as a Corporal, he was *not* authorized to remove Plaintiff from his cell for shower

call. He testified that he did not think Plaintiff was going to cause any problems so he and Corporal Witherspoon decided to escort Plaintiff to shower call.[4]

5.      At approximately 7:45 p.m. on February 21, 2012, Defendant Cox and Corporal Witherspoon opened the solid steel outer door to Plaintiff's cell. They placed Plaintiff in handcuffs, a belly chain, and leg restraints.[5] Then they opened the inner-barred door and led Plaintiff into the hallway for shower call.

6.      Plaintiff knew that Defendant Cox and Corporal Witherspoon were *not* authorized to remove him from his cell. Plaintiff testified that, since being placed in Isolation 3, in January of 2012, this was the first time anyone other than a Sergeant, Lieutenant, or Captain had removed him from his cell. Plaintiff admitted that, prior to February 21, he had never had any problems with Defendant Cox or Corporal Witherspoon. He testified that he cooperated with Defendant Cox as he placed the handcuffs, belly chain, and leg restrains on him. He also voluntarily left his cell and allowed Defendant Cox and Corporal Witherspoon to walk him the short distance to the showers.

7.      After taking his shower, Defendant Cox placed Plaintiff back in restraints, with his hands handcuffed behind his back and connected to the belly

---

[4] In his 005 Incident Report, Lieutenant Washington noted that Defendant Cox and Corporal Witherspoon were not authorized to remove Plaintiff from his cell and that their decision to do so was in violation of orders. Both Defendant Cox and Corporal Witherspoon received written "corrective action" for violating the "Staff Alert" order posted on the door of Plaintiff's cell. *See* DX#5. Lieutenant Washington testified that, as punishment, he placed Defendant Cox and Corporal Witherspoon on probation.

[5] The handcuffs were connected to the belly chain. Another chain connected the belly chain to the leg restraints. Altogether, approximately six feet of chains were connected together to form Plaintiff's restraint system.

chain, and his leg in ankle cuffs, with a chain connecting the leg restraints to the belly chain.

8.      As they walked back down the hallway, toward his cell, Plaintiff asked Defendant Cox why he had not arranged for a barber to trim his beard *before* his shower.[6] Defendant Cox said he would return Plaintiff to the shower area to have his beard trimmed after he had escorted other prisoners in Isolation 3 to shower call.

9.      During his testimony, *Plaintiff admitted that*: (a) as soon as Defendant Cox refused to allow him to return to the shower area to get his beard trimmed he became angry and aggressive and began to curse Defendant Cox; (b) in order to restrain and control Plaintiff, Defendant Cox placed his hands on Plaintiff's arm and shoulder and continued to lead Plaintiff toward his cell; and (c) as they were walking toward his cell, Plaintiff unsuccessfully tried to break away from Defendant Cox.

10.     When they arrived at his cell, Plaintiff and Defendant Cox entered the outer door and Corporal Witherspoon followed.[7] In the "alcove area," between the solid steel outer door and the barred inner door, Plaintiff allowed Defendant Cox to remove his leg restraints and belly chain. Defendant Cox then directed Plaintiff

---

[6] Plaintiff testified that Sergeants and Lieutenants who escorted him to shower call always arranged for a barber to trim his beard *before* his shower. This allowed Plaintiff to wash off the trimmed facial hair during his shower. Plaintiff explained that having his beard trimmed *after* his shower left him with no way to wash off his facial hair. Plaintiff made it very clear that getting his facial hair trimmed before his shower was very important to him.

[7] This incident appears to have taken place sometime between approximately 8:15 p.m. and 8:29 p.m.

into his cell, with his hands still cuffed behind his back. Defendant Cox threaded the chains, which were still attached to the handcuffs, through the cell bars and closed the cell door. This left Plaintiff standing inside his cell with his back turned to the bars and his hands placed close to the bars so that Defendant Cox could unlock the handcuffs. Defendant Cox stood outside the cell, facing the bars, with approximately five or six feet of chains in one hand and the key to Plaintiff's handcuffs and the cell door key in the other. Importantly, the chains comprising the restraint system were still attached to Plaintiff's handcuffs.

11.     During his testimony, *Plaintiff also admitted that*: (a) as soon as Defendant Cox removed Plaintiff's left handcuff  he turned, faced Defendant Cox, and grabbed the chain, with his still-cuffed right hand, and began to pull the chain back inside his cell; (b) he was still angry with Defendant Cox for not allowing him to get his beard trimmed before his shower; (c) Defendant Cox repeatedly ordered him to release the chain so he could remove the cuff from Plaintiff's right hand; (d) he *refused* to comply with Defendant Cox's direct orders and continued to try to pull the chain inside his cell; and (e) he told Defendant Cox he would *not* release the chain until Defendant Cox brought a Sergeant or Lieutenant to his cell to hear his complaint about Defendant Cox not allowing him to get his beard trimmed before his shower and to report that two Corporals had removed him from his cell in violation of the Staff Alert Order.

8

12.     During the tug of war between Plaintiff and Defendant Cox, both men pulled on the chain from different sides of the cell bars. Plaintiff testified that, during this tug of war, his left free hand was holding onto the bars on the cell door, while he pulled on the chain with his still-cuffed right hand. According to Plaintiff, at some point after he had repeatedly refused to comply with Defendant Cox's orders to release the chain, Defendant Cox took the large brass cell door key and hit him twice on the top of his left hand in the area between his second and third fingers.[8] Defendant Cox initially testified that he had no recollection of hitting Plaintiff's left hand with the cell door key, but, later in his testimony, he flatly denied doing so.

13.     Plaintiff decided to stop pulling on the chain and extended his right hand so that Defendant Cox could remove the cuff. *Plaintiff admitted that*, with Defendant Cox standing only about one foot in front of him, he spit twice directly into Defendant Cox's face as he was removing the cuff from Plaintiff's right hand. According to Plaintiff, after Defendant Cox removed the cuff from his right hand, Defendant Cox stepped back to the outer door and spit twice at Plaintiff, hitting him in the area of his face, neck, or chest.

14.     Defendant Cox denied ever spitting at or on Plaintiff. Corporal Witherspoon, who was standing right next to Defendant Cox during the incident,

---

[8] Plaintiff testified that the cell door key was six or seven inches long.

testified that Defendant Cox never spit at or on Plaintiff and, if Defendant Cox had done so, Corporal Witherspoon would have reported him for doing so in his 005 Incident Report. Nothing in Corporal Witherspoon's 005 Incident Report mentions Defendant Cox spitting at or on Plaintiff.[9] *See* DX#2.

15.    In Defendant Cox's 005 "Incident Report and Use of Force Report," he notes that Plaintiff "spit directly in my face repeatedly" but does not mention spitting back at Plaintiff. *See* DX#1.

16.    In Lieutenant Washington's 005 Incident Report, he related what Defendant Cox told him about the use of force incident. According to Lieutenant Washington's report, Defendant Cox described how Plaintiff had repeatedly spit in his face, but said nothing about spitting back at Plaintiff. *See* DX#4.

---

[9] A video camera recorded everything that took place *in the hallway* outside of Plaintiff's cell. Because everything associated with the use of force incident, with the possible exception of Plaintiff's allegations that Defendant Cox spit at him from the area in front of the outer door, took place *inside the alcove area* between the outer door and the inner cell door, only Defendant Cox allegedly spitting back at Plaintiff would have been captured on the video.

Defendant Cox introduced into evidence a video which purportedly captured the use of force incident. *See* DX#15. It was relied on by Grievance Officer Yolanda Roby and EARU Warden Danny Burl to deny Plaintiff's Grievance alleging that Defendant Cox had used excessive force. *See* DX#14 at pp.5-6. After the Court reviewed that video, which begins at 8:30 p.m. on February 21, 2012, and ends at 10:30 p.m., it was manifestly obvious that the excessive force incident took place shortly *before* the video begins at 8:30 p.m. Thus, staff members at the EARU failed to preserve the relevant portion of the video that would have captured what happened in the hallway before the use of force incident, and that would have supported or undermined Plaintiff's claim that Defendant Cox spit at or on him from the hallway.

At the beginning of the Evidentiary Hearing, the Court heard testimony from all of the EARU staff involved in preserving DX#15 and Grievance Coordinator Roby in order to decide if Plaintiff was entitled to the benefit of a spoliation instruction. The Court concluded that, while *all* of the EARU employees who were involved with preserving or reviewing the video were guilty of negligence or gross negligence, there was no evidence that any of those employees *intentionally* failed to preserve the relevant portion of the video. Accordingly, the Court concluded that Plaintiff was not entitled to the benefit of an adverse inference instruction. *See Hallmark Cards Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013). The detailed findings which support this conclusion are contained in the record at the beginning of the Evidentiary Hearing.

17.     Both Plaintiff and Defendant Cox are large and powerfully built men. Plaintiff testified that he weighed over three-hundred pounds. If Plaintiff had been successful in pulling the belly chain and leg restraints into his cell, he would have possessed a potentially lethal weapon that he could have used against Defendant Cox, Corporal Witherspoon, or any other guards who might have attempted to enter his cell and take the chain away from him. By continuing to pull on the chain, after Defendant Cox repeatedly ordered him to stop, there can be no doubt that Plaintiff was attempting to gain control of the chain. Given his history of violence toward staff members and other prisoners, there can also be little doubt that, if he had been successful in gaining control of the chain, he would have used it as a weapon.

18.     When Plaintiff, *by his own admission*, grabbed the belly chain and tried to pull it into his cell, Defendant Cox was confronted with an extremely dangerous and escalating situation involving a well-documented violent prisoner who was attempting to gain control of a potentially lethal weapon. The dangers posed by this situation justified Defendant Cox to use as much force as was necessary to regain control of the chain and remove it from Plaintiff's cell.

19.     Defendant Cox denied using the cell door key to hit Plaintiff on his left hand. However, the medical evidence establishes that Plaintiff had several abrasions and bruises on the top of his left hand that were *consistent with* the kind

of injuries associated with being hit several times with a heavy brass cell door key. *See* DX#9 at p.3. The greater weight of the evidence supports Plaintiff's testimony on this point and the Court finds that Defendant Cox struck Plaintiff twice on the top of his left hand with the cell door key. However, *by Plaintiff's own admission*, Defendant Cox struck those blows in an effort to get Plaintiff to release the chain he was trying to pull inside his cell. The Court finds that Defendant Cox's decision to strike Plaintiff twice on the left hand with the cell door key was *clearly reasonable* given the risk and danger created by Plaintiff's actions. Nothing about Defendant Cox's actions in trying to get Plaintiff to release the chain suggests that he hit Plaintiff with the cell door key in a "sadistic or malicious" fashion. Rather, the evidence establishes that he did so only for the purpose of making Plaintiff release a potentially lethal weapon.

20.     At approximately 9:10 p.m., Lieutenant Washington and Sergeant Daniels returned to Plaintiff's cell. Lieutenant Washington took pictures of Plaintiff's injuries, which consisted of several abrasions to the top of his left hand between his index and middle finger, cuff marks on his left and right wrist, and an abrasion on the inside of his right forearm.[10] Plaintiff was then escorted to the infirmary to have a nurse treat the injuries to his left hand and right inner forearm.

---

[10] Lieutenant Washington testified that, after he took those photographs, he uploaded them into the ADC's electronic data storage system. Defendant Cox's attorney was unable, after diligent inquiry, to locate the electronically stored photographs. She was, however, able to locate photocopies of several of those photographs which were contained in the investigative file of the February 21 use of force incident. *See* DX#24. Those

21.     According to the nurse's notes, Plaintiff arrived at the infirmary at 9:27 p.m. The nurse described Plaintiff's injuries and the treatment he received as follows:

> "Noted to left wrist cuff marks with small abrasion noted between 2 and 3 digits to left hand. Right wrist noted to have cuff marks with a small open abrasion with dried blood noted to right inner forearm. No other bruises/abrasions noted. No active bleeding noted. Area cleansed. No bandages needed. Instructed to keep area clean and dry. Released to security."

*See* DX#9 at p.3. Given the size and strength of Plaintiff and Defendant Cox and the violent tug of war that took place over possession of the chain, Plaintiff's injuries to his left hand and right arm were relatively minor and required no bandages, splints, or other medical treatment.

22.     Lieutenant Washington and Sergeant Daniels then escorted Plaintiff from the infirmary back to his cell, without any problems.

23.     Immediately after the incident, Plaintiff completed a Grievance, dated February 21, 2012. In this Grievance, Plaintiff stated that, during the incident, Defendant Cox: (a) "spit on me 4 times;" (b) "hit my hands" with the door key; and (c) "assaulted me." *See* DX#14 at p.1. This grievance was denied at the initial level of review and all levels of appeal. *See* DX#14 at pp.3-5. Thus, Plaintiff fully

---

photocopies were of such poor quality that it is impossible to see, much less evaluate, the injuries to Plaintiff's left hand. After questioning witnesses from the ADC who had knowledge about how the electronically stored photographs should have been retained, the Court found that, due to inadvertence, lack of attention, or negligence, the photographs were erased from the data storage system. Because there was *no evidence* that anyone had *intentionally* deleted the electronically stored photographs from the data storage system, the Court concluded that Plaintiff was not entitled to an adverse inference instruction based on spoliation. *See Hallmark Cards Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013).

exhausted his administrative remedies regarding his excessive force claim before he initiated this § 1983 action.

24.     On February 22, 2012, a nurse saw Plaintiff at his cell in Isolation 3. He complained of pain in his left hand, which he rated as 7 on a 10 scale. He told the nurse that Defendant Cox "was beating my hand with his cuff key." The nurse's notes reflect that Plaintiff had "moderate edema" of the left hand and fingers and "small abrasions" to the third and fourth digits. Plaintiff told the nurse he was unable to move the fingers of his left hand. *See* DX#9 at p.4.

25.     On February 23, 2012, Dr. Obi ordered an x-ray of Plaintiff's left hand, which was scheduled for February 24. *See* DX#9 at p.5. Plaintiff testified that the x-ray was taken and the results were negative.

26.     Shortly after the February 21 incident, Defendant Cox wrote a Disciplinary Violation charging Plaintiff with the following: (a) Insolence to a Staff Member; (b) Using Abusive/Obscene Language; (c) Failure to Obey Order of Staff; and (d) Throwing or Ejecting Fluids/Excrement. *See* DX#6.

27.     On February 29, 2012, a disciplinary hearing took place and Plaintiff was found guilty of Insolence to a Staff Member; Failure to Obey Order of Staff; and Throwing or Ejecting Fluids/Excrement. He was found not guilty of Using Abusive/Obscene Language. As punishment, he received thirty days of punitive isolation. *See* DX#6 at p.2.

28.   On March 1, 2012, Plaintiff was transferred from the Maximum Security area of the EARU to the Tucker Maximum Security Unit. According to the nurse's notes, Plaintiff "denied complaints or injuries." *See* DX#9 at p.6.

29.   On or about December 6, 2012, Plaintiff was transferred from Tucker Max to the Varner Super Max Unit. *See* DX#10 at p.19. He has remained in Varner Super Max through and including the date of the Evidentiary Hearing.

30.   The Court has seldom had a prisoner who testified as candidly as Plaintiff. He *admitted* his own misconduct, in trying to pull his chains into his cell, and he *admitted* that his misconduct had triggered the use of force incident with Defendant Cox. Plaintiff's dangerous and threatening behavior, in trying to gain control of a potentially lethal weapon, justified Defendant Cox to use the reasonable and necessary force that he employed to make Plaintiff release the chains and comply with his orders. While it is a close call on whom to believe in the alleged spitting contest between Plaintiff and Defendant Cox, Plaintiff once again *admitted* that he initiated the incident by spitting directly into Defendant Cox's face, at least twice, while he removed Plaintiff's right handcuff. After carefully weighing the diametrically opposing testimony of Plaintiff and Defendant Cox and Corporal Witherspoon, the Court concludes that Plaintiff has failed to prove by a preponderance of the evidence that Defendant Cox spit at or on him.[11]

---

[11] Even if the Court had found that Defendant Cox spit on Plaintiff, it would only have been able to award nominal damages and a small amount in punitive damages to punish Defendant Cox for his action. *See Sisney v.*

### III. Conclusions of Law

1.    To prevail on his excessive force claim, Plaintiff was required to prove by a preponderance of the evidence that the force Defendant Cox used during the February 21, 2012 incident, was employed "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008); *see also Whitley v. Albers*, 475 U.S. 312, 322 (1986) (holding that the evidence must support a "reliable inference of wantonness," and not "a mere dispute over the reasonableness of particular use of force or the existence of arguably superior alternatives").

2.    The relevant factors that must be considered when making this determination are: (a) the objective need for force; (b) the relationship between the need and the amount of force used; (c) the threat reasonably perceived by the defendant; (d) any efforts by the defendant to temper the severity of the forceful response; and (e) the extent of the inmate's injuries. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

3.    Applying controlling Eighth Circuit precedent to the facts in this case, the Court concludes that Plaintiff has failed to satisfy his burden of proving any of

---

*Reisch,* 674 F.3d 839, 843 (8th Cir. 2012); *Williams v. Hobbs,* 662 F.3d 994, 110 (8th Cir. 2011); *Royal v. Kautzky,* 375 F.3d 720, 723 (8th Cir. 2004).

the essential elements of his excessive force claim. The evidence clearly established that Plaintiff, a large and powerful man with a history of violence towards guards and prisoners, engaged in conduct that created an extremely dangerous situation for Defendant Cox. Defendant Cox accurately accessed the danger created by Plaintiff's behavior and reasonably responded – first by giving Plaintiff several direct orders to release the chain, and, when Plaintiff refused to comply with those orders and continued to try to pull the chains inside his cell, using the reasonable and necessary force required to make Plaintiff release the chains. All of the factors the Court must consider in evaluating Plaintiff's excessive force claim weigh heavily in favor of Defendant Cox and against Plaintiff. Finally, there was no evidence that Defendant Cox had a motive to harm Plaintiff in removing him from his cell, without the proper authorization, or otherwise acted sadistically or maliciously in using the force necessary to regain possession and control of the chains and leg restraints.

## IV. Conclusion

IT IS THEREFORE RECOMMENDED that Plaintiff's excessive force claim be dismissed, with prejudice, and that Judgment be entered in favor of Defendant Cox.

Dated this 23rd day of August, 2013.

_____
UNITED STATES MAGISTRATE JUDGE